UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

ERIC C. HUNT,

                    Plaintiff,

              v.

CON EDISON CO. N.Y.C.,

                    Defendant.

**MEMORANDUM & ORDER**
16-CV-0677 (MKB)

-------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Plaintiff Eric Hunt, proceeding *pro se*, commenced the above-captioned action on

February 8, 2016, against Defendant Con Edison Co. N.Y.C. ("Con Edison").[1]  On August 22,

2016, Plaintiff filed an Amended Complaint asserting claims of discrimination, failure to

promote and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e *et seq.* ("Title VII"), seeking injunctive relief and damages.  (Am. Compl. 1, 3, 9,

Docket Entry No. 8-1.)[2]  Defendant moves to dismiss the Amended Complaint for, among other

reasons, failure to state a claim and Plaintiff's inaccurate statement of poverty, pursuant to Title

---

[1]  The Court dismissed the Complaint on May 20, 2016, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and granted Plaintiff leave to file an amended complaint.  *See Hunt v. Con Edison Co. N.Y.C.*, No. 16-CV-0677, 2016 WL 8711358, at *1 (E.D.N.Y. May 20, 2016).

[2]  Because the Complaint is not consecutively paginated, the Court's citations refer to the page numbers assigned by the Electronic Document Filing System (ECF).  The Court cites to the Amended Complaint, as updated on November 15, 2017.  (*See* Court's Notice dated November 15, 2017, Docket Entry No. 21.)  On that date the Court updated the electronic copy of the Amended Complaint to include pages that were inadvertently omitted by the Court and gave Defendant additional time to address the issues contained in those pages.  (*Id.*)  On December 1, 2017, Defendant submitted a supplemental brief to the Motion to Dismiss the Amended Complaint.  (Def. Suppl. Br. to the Mot. to Dismiss ("Def. Suppl. Br."), Docket Entry No. 22.)

28 U.S.C. § 1915.  (Def. Mot. to Dismiss ("Def. Mot."), Docket Entry No. 19; Def. Mem. in Supp. of Def. Mot. ("Def. Mem."), Docket Entry No. 19-3.)  Plaintiff has not opposed the motion to dismiss.  For the reasons set forth below, the Court grants Defendant's motion to dismiss in part and denies it in part.

## I. Background

The following facts are taken from the Amended Complaint and are accepted as true for the purposes of deciding this motion.

Plaintiff has been employed by Con Edison since 1994.  (Am. Compl. 6.)  Plaintiff started his career at Con Edison as a "helper" and worked his way up to become a lead mechanic.  (*Id.*)  Plaintiff identifies as black and alleges that Con Edison has engaged in systemic discriminatory practices against him and other employees who are "persons of color" and of "minority descent."  (*Id.* at 8.)  Plaintiff specifically alleges claims for failure to promote him to a management position, unequal terms and conditions of employment, and retaliation.  (*Id.* at 4.)

In 2005, Plaintiff submitted a complaint to Equal Employment Opportunity Affairs ("EEOA"), Con Edison's internal equal employment review board, alleging eleven instances of mistreatment due to "racial bias."[3]  (*Id.* at 7.)  EEOA did not address the allegations.  (*Id.*)

On February 8, 2012, Plaintiff submitted a complaint to the Equal Employment Opportunity Commission ("EEOC").  The EEOC issued a right to sue letter on May 12, 2015,

---

[3] Plaintiff attaches a copy of the EEOA complaint to the Amended Complaint ("EEOA Compl.").  The Court, therefore, considers the EEOA complaint to be a part of the Amended Complaint. *Nicosia v. Amazon.com Inc.*, 834 F. 3d 220, 230–31 (2d Cir. 2016) ("A complaint 'is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'")  "In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Wilson v. Kellogg Co.*, 628 F. App'x 59, 60 (2d Cir. 2016) (quoting *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)).

which Plaintiff did not receive until December 9, 2015.  Plaintiff filed this action in February of 2016.

### a.  Failure to promote

Plaintiff alleges that Con Edison failed to promote him to a management position due to racial bias.  (*Id.* at 8.)  In the past four years, Plaintiff trained ten of the eleven mechanics who have been promoted to management positions, but Plaintiff has been overlooked for a promotion.  (*Id.* at 8–9.)  None of the promoted mechanics is a "person of color" or of "minority descent."  (*Id.*)  Plaintiff asserts that in order to be promoted at Con Edison, one has to be sponsored by someone in a management position, and individuals who are "unliked" are never sponsored for promotion.  (*Id.*)  Although Plaintiff can apply for a promotion without sponsorship, he alleges that those who apply without sponsorship are disqualified through "frivolous disciplinary actions, such as write-ups and suspensions."  (*Id.* at 9.)  Such disciplinary actions, in turn, can bar an employee from being able to advance for up to one year, well beyond the timeline of an application process.  (*Id.*)  In addition to disqualification, these disciplinary actions could result in decreased protections for the employee, making the employee vulnerable to termination.  (*Id.*)  Plaintiff alleges that he was a victim of such practice, but fails to specify when and under what circumstances.  (*Id.*)  He also fails to state any specific management position for which he applied, or when he submitted any application.  (*Id.*)

### b.  Reassignment from the Gas Distribution Services to the Construction Department

Plaintiff is a member of an Emergency Response Group ("ERG"), which was ordinarily assigned to the Gas Distribution Services ("GDS") Department.  (Am. Compl. 10.)  Plaintiff alleges that Defendant reassigned Plaintiff's ERG from the GDS Department to the Construction Department for discriminatory reasons.  (*Id.*)  Plaintiff alleges that the GDS Department is a

"more technical department dealing with customers both commercial, and residential, and the problems they may have, of gas nature, in their homes or businesses" and the Construction Department "is a somewhat less technical department, focusing on working outside in the street, in a more physical capacity, through ground breaking, excavation, and pipe repair." (*Id.* at 8.)

In addition, Plaintiff appears to assert that because the GDS Department has "all sorts of premiums," such as "Night Premium, Sunday Premium, Midnight Premium," unlike the Construction Department, the reassignment has adversely affected his ability to take advantage of the premiums. Plaintiff's ERG was not permitted "to cover GDS shifts or work overtime," even when their schedules allowed. (*Id.*) Plaintiff alleges that no other ERG has been previously reassigned to the Construction Department and the only explanation for such a transfer is to target him. (*Id.* at 10.) When Plaintiff inquired of an unidentified GDS Planner about the reasons for reassignment of Plaintiff's ERG, the Planner responded: "Well how else do you get rid of one individual, or two or three individuals, without making it look as if that is what you are doing, you get rid of the entire group." (*Id.*) Plaintiff does not specify when this reassignment took place, whether it was permanent, or how long the reassignment lasted. (*Id.* at 8.)

### c. Retaliation

Plaintiff alleges that Con Edison retaliated against him for filing complaints with EEOA and the EEOC. (*Id.* at 4.) Plaintiff states that the reassignment of ERG from the GDS Department to the Construction Department was a "hidden act[] of retaliation." (*Id.* at 10.)

### d. Other instances of alleged discrimination

Plaintiff's EEOA complaint describes several instances of alleged discrimination prior to 2005, including: management's refusal to provide Plaintiff with proper tools, uniform and gear in a timely manner; distribution to all employees of information about disciplinary actions taken

against Plaintiff; imposing additional hurdles in Plaintiff's application for the "Mechanic A" position; and falsification of documents to accuse Plaintiff and his partner of leaving work early. (*Id.* at 16.)

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Concord Assoc.s, L.P. v. Entm't Prop. Trust*, 817 F.3d 46, 52 (2d Cir. 2016) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").

### b. Timeliness of claims

Defendant argues that the Court should dismiss Plaintiff's claims as untimely because Plaintiff: (1) filed his EEOC complaint more than 300 days after the alleged instances of discrimination; and (2) filed this lawsuit more than ninety days after the EEOC issued the right to sue letter. (Def. Mem. 11–13.) The Court discusses each issue below.

### i. Plaintiff's claims included in the EEOA complaint are time-barred and are not subject to equitable tolling

Before bringing a federal claim under Title VII, a plaintiff must first file a complaint with the EEOC or equivalent state agency. 42 U.S.C. § 2000e-5(e)(1); *Perez v. Harbor Freight Tools*, --- F. App'x ---, ---, 2017 WL 2644638, at *1 (2d Cir. June 20, 2017) ("Under Title VII, a plaintiff in New York State must file an employment discrimination charge with the EEOC within 300 days after an alleged unlawful employment practice occurred." (citations and internal quotations marks omitted)). The 300-day period serves as a statute of limitations, and claims regarding acts that occurred more than 300 days prior to the employee's filing a charge of discrimination with the EEOC are thus time-barred. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015); *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 125–126 (2d Cir. 2010); *Klein v. N.Y. Univ.,* No. 07-CV-0160, 2008 WL 3843514, at *2 (S.D.N.Y. Aug. 14, 2008) (citing *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001)).

The doctrine of equitable tolling "may be applied by courts to prevent unusually harsh results from dismissals when there are excusable reasons for a plaintiff's failure to meet the required time limitation." *Como v. O'Neill*, No. 02-CV-0985, 2002 WL 31729509, at *4 (S.D.N.Y. Dec. 4, 2002). "As a general matter, a litigant seeking equitable tolling must establish two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian*

*Tribe of Wisconsin v. United States*, 577 U.S. ---, ---, 136 S. Ct. 750, 756 (2016) (quoting

*Holland v. Florida*, 560 U.S. 631, 649 (2010)).  Equitable tolling is "only appropriate in rare and

exceptional circumstances, in which a party is prevented in some extraordinary way from

exercising his rights."  *Baroor v. N.Y.C. Dep't of Educ.*, 362 F. App'x 157, 159 (2d Cir. 2010)

(quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003)); *Franklin v.

New York*, 653 F. App'x 771 (2d Cir. 2016) ("Equitable tolling applies only in the rare and

exceptional circumstance." (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000))); *see

also Mandarino v. Mandarino*, 408 F. App'x 428, 430 (2d Cir. 2011) ("[W]e have held that a

litigant seeking equitable tolling cannot rely on conclusory and vague claims . . . ."); *South. v.

Saab Cars USA, Inc.*, 28 F.3d 9, 12 (2d Cir. 1994) (stating that a failure by a plaintiff, or her

attorney, to act diligently "is insufficient to justify application of an equitable toll").

Although held to more lenient standards, *pro se* litigants are not excused from

establishing these elements.  *See, e.g., Valverde v. Stinson*, 224 F.3d 129, 133–34 (2d Cir. 2000)

(discussing whether *pro se* petitioner's allegations were sufficient to establish potential basis for

equitable tolling based on general equitable tolling principles); *Rosas v. Berry Plastics (Pliant

LLC)*, 649 F. App'x 3, 5 (2d Cir. 2016) (finding that a *pro se* petitioner did not show diligence or

extraordinary circumstances).

Plaintiff filed the EEOA complaint in 2005, and his EEOC complaint more than six years

later in 2012.  Thus, all alleged discriminatory actions included in the 2005 EEOA complaint,

including Defendant's refusal to timely provide uniform and gear, disclosure to all employees of

disciplinary actions against Plaintiff, imposing additional hurdles to Plaintiff's application for the

"Mechanic A" position, and fabrication of documents against Plaintiff, are beyond the 300 days

statute of limitations period.

Moreover, Plaintiff has not shown that he is entitled to equitable tolling. Plaintiff has not alleged any exceptional circumstances that prevented him from filing his EEOC complaint in a timely manner. Although Plaintiff alleges that EEOA did not take any steps to address his complaint for years, and only sent annual notices asking whether Plaintiff would like to close the pending case, he does not allege that he was misled by EEOA and waited to file his EEOC complaint in reliance on the EEOA process. Indeed, Plaintiff states that he was warned by a union official to submit his complaint to the EEOC and that EEOA would not adjudicate his claims. (Am. Compl. 7.)

Based on the allegations in the Amended Complaint, Plaintiff has not shown that he is entitled to equitable tolling for the pre-2005 allegations included in his EEOA complaint. Accordingly, the Court dismisses as time barred Plaintiff's claims based on conduct complained of in his 2005 EEOA complaint.

### ii. Plaintiff timely filed the Complaint after receiving the right to sue letter from the EEOC

Defendant argues that the Amended Complaint is untimely because the EEOC issued the right to sue letter in May of 2015, and Plaintiff did not file this action until February of 2016, more than ninety days after the letter was issued. (Def. Mem. 13.) Defendant argues that Plaintiff has failed to rebut the presumption that the letter was received three days after it was issued because the allegation that he did not receive the right to sue letter until December of 2015 is an unsworn statement and therefore inadmissible. (*Id.*) (citing *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525-26 (2d Cir. 1996)). Plaintiff asserts that he received the right to sue letter on December 9, 2015. (Compl. 6, Docket Entry No. 1.)

A Title VII action must be filed within ninety days of receiving the EEOC's right to sue letter. *Jones v. Rochester City Sch. Dist.*, 676 F. App'x 95, 97 (2d Cir. 2017), *as amended* (Jan.

26, 2017) ("In order to be timely, a claim under Title VII . . . must be filed within ninety days of the claimant's receipt of a right-to-sue letter.") (citing *Sherlock*, 84 F.3d at 525). "[W]hen a plaintiff's complaint alleges that a Right to Sue letter was received more than three days after the mailing date and less than ninety days prior to filing in federal court, a court must deny a defendant's motion to dismiss for timeliness." *Carpenter v. City of New York*, No. 09-CV-4524, 2010 WL 2680427, at *2 (E.D.N.Y. June 30, 2010); *see also Ruiz v. N.Y.C. Fire Dep't,* No. 00-CV-4371, 2001 WL 767009, at *2 (S.D.N.Y. July 9, 2001) (stating that when plaintiff specifically alleges that she received the right to sue letter on a certain date, on the motion to dismiss, the court must accept as true the allegations in the complaint and must draw inferences in the light most favorable to plaintiff.) (citing *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000)).

Defendant unpersuasively relies on *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522 (2d Cir. 1996) to argue that a sworn statement is required to rebut the three-day presumption. In *Sherlock*, the court discussed the need for a sworn statement by the plaintiff's husband because the plaintiff did not recall the date of receipt of the letter and therefore could not rely on her husband's recollection that she received the letter about two weeks late, without a sworn statement from her husband. *Sherlock*, 84 F.3d at 525–26. No such hearsay issues are present here. Plaintiff alleges in the Complaint that he did not receive the right to sue letter until December 9, 2015. (Compl. 6.) Because the Complaint was filed on February 8, 2016, (*id.* at 1), less than ninety days after Plaintiff alleges that he received the right to sue letter, the action is timely.

### c. Failure to exhaust administrative remedies

In its December 1, 2017, supplemental brief in support of its motion to dismiss,

Defendant raises a "failure to exhaust" defense to Plaintiff's claims based on (1) reassignment from the GDS Department to Construction Department; and (2) failure to promote him to a management position. (Def. Suppl. Br. 1.) Plaintiff did not include either claim in the EEOC charge. (*See* Pl. EEOC Charge, annexed to Def. Suppl. Br. as Ex. 2.)

"Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII . . . statutory scheme[ ]; accordingly, it is a precondition to bringing such claims in federal court. *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 385 (2d Cir. 2015) (alterations in original) (internal quotation marks omitted) (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001)). However, exhaustion of administrative remedies is an affirmative defense. *See Boos v. Runyon*, 201 F.3d 178, 182 (2d Cir. 2000); *Downey v. Runyon*, 160 F.3d 139, 146 (2d Cir. 1998). An affirmative defense is waived if it is not raised in a timely manner. *S.E.C. v. Amerindo Inv. Advisors*, 639 F. App'x 752, 754 (2d Cir. 2016) (stating that an affirmative defense is waived if not raised in the motion to dismiss the amended complaint) (citing *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 967 F.2d 742, 751–52 (2d Cir. 1992)).

Defendant's newly raised failure to exhaust defense to the discrimination claim based on the reassignment of the ERG from the GDS Department to the Construction Department is timely because the copy of the Amended Complaint that Defendant had access to prior to filing its motion to dismiss did not include any allegations about this claim.

However, Defendant's failure to exhaust defense to the failure to promote claim is untimely because Defendant had notice of this claim prior to filing its motion to dismiss and failed to raise this defense in its motion. Indeed, in its moving papers Defendant discussed this claim at length, without raising the administrative exhaustion defense. (*See* Def. Mem. 8.)

Defendant has thus waived the failure to exhaust defense to this claim. *See Amerindo Inv. Advisors*, 639 F. App'x at 754 (stating that an affirmative defense is waived if not raised in the motion to dismiss the amended complaint) (citing *Litton Indus.,* 967 F.2d at 751–52).

The Court reviews the sufficiency of Plaintiff's allegations for (1) his employment discrimination claim based on Defendant's failure to promote him to a management position, and (2) his retaliation claim based on Defendant's reassignment of Plaintiff's ERG from the GDS Department to the Construction Department in retaliation for Plaintiff filing the EEOA and EEOC complaints.[4]

### d. Failure to promote claim

Plaintiff alleges that, despite his qualifications, including the fact that he has trained ten of the eleven mechanics who have been promoted to management positions in the past four years, all of whom were white, Defendant failed to promote him to a management position because of his race and color.[5] (Am. Compl. 8–9.) Defendant argues that Plaintiff fails to state a claim of failure to promote because Plaintiff does not specify whether he ever applied for a management position nor that his application was ever denied. (Def's Mem 8.)

---

[4] Although the Court dismisses the employment discrimination claim based on the reassignment of Plaintiff's ERG from the GDS Department to the Construction Department because of Plaintiff's failure to exhaust his administrative remedies, the Court nevertheless reviews the merits of the retaliation claim based on the same factual allegations because Defendant had notice of Plaintiff's retaliation claim prior to filing the motion to dismiss the Amended Complaint, albeit not the details of the alleged adverse action constituting the retaliation. (Def. Mem. 10) (arguing for dismissal of the retaliation claim due to failure to state a claim).

[5] Although Plaintiff refers to the candidates who are not able to get sponsorships for promotion as "unliked" candidates, the Court understands him to mean minority candidates, as Plaintiff's other allegations specify that the seventeen mechanics who have been promoted for supervisory positions are white, and none of the minority mechanics have been considered for such positions. (Am. Compl. 8–9.)

To establish a prima facie case of employment discrimination based on a failure to promote claim under Title VII, a plaintiff must show that (1) he is a member of a protected class, (2) he applied and was qualified for a position for which the employer was seeking applicants, (3) he was not selected for the position, and (4) the failure to promote occurred under circumstances giving rise to an inference of discriminatory intent. *Duckett v. Foxx*, 672 F. App'x 45, 47 (2d Cir. 2016) (citing *Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir. 2000)); *Tolbert v. Smith*, 790 F.3d 427, 435 (2d Cir. 2015); *see also Yu v. N.Y.C. Hous. Dev. Corp.*, 494 F. App'x 122, 124–25 (2d Cir. 2012); *Tanvir v. N.Y.C. Health & Hosps. Corp.*, 480 F. App'x 620, 621 (2d Cir. 2012); *Lomotey v. Conn.-Dep't of Transp.*, 355 F. App'x 478, 480 (2d Cir. 2009); *Sandor v. Safe Horizon*, Inc., No. 08–CV–4636, 2011 WL 115295, at *8 (E.D.N.Y. Jan. 13, 2011).

However, at the pleading stage, a plaintiff does not need to prove every element of the prima facie case, but the facts alleged must give "plausible support to the reduced requirements" of the prima facie case. *Littlejohn*, 795 F.3d at 311; *see Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 767 (2d Cir. 2015); *Vega*, 801 F.3d at 84; *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006). "[T]he prima facie case is an evidentiary standard, and not a pleading requirement; therefore, a plaintiff need not allege a prima facie case to survive a motion to dismiss his discrimination claim." *Opoku v. Brega*, No. 15-CV-2213, 2016 WL 5720807, at *5 (S.D.N.Y. Sept. 30, 2016) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)). Thus, a plaintiff need only plead facts sufficient to give "plausible support" to the plaintiff's "minimal" initial burden, which is governed by the statute under which he brings his claims. *Vega*, 801 F.3d at 84 (quoting *Littlejohn*, 795 F.3d at 307, 312).

Plaintiff is black and alleges discrimination based on his race and color, (Am. Compl. 5,

11), and is therefore a member of two protected groups for purposes of his claim of discrimination on the basis of race and color. *See* 42 U.S.C. § 2000e-2(a)(1) (prohibiting employment discrimination on the basis of race and color). Plaintiff also satisfies the third element as he states that he was not promoted to a supervisory position. *See Sandor,* 2011 WL 115295, at *9. (finding third element established where the plaintiff was not selected for the position). In addition, Plaintiff states that he was qualified for a management position, demonstrated by the fact that Defendant requested that Plaintiff train those who were promoted to such positions, (Am. Compl. 9), and Defendant does not contest Plaintiff's qualification for the management positions. The Court discusses whether Plaintiff applied for a higher position and whether the failure to promote occurred under circumstances giving rise to an inference of discriminatory intent.

### i. Application for a higher position

Plaintiff alleges that during his tenure at Con Edison since 1994, none of the seventeen mechanics promoted to management positions have been members of a minority group. (*Id.*) Plaintiff describes Con Edison's promotion practice as a sponsorship-based system, where someone in management has to sponsor the candidate for a promotion. (*Id.*) Plaintiff further alleges that submitting an application for a position without sponsorship would result in a disciplinary action. (*Id.* at 8–9.) Defendant argues that because Plaintiff does not specify whether he ever applied for a management position and was denied a promotion, he fails to state a claim for failure to promote. (Def. Mem 8.)

To bring a failure to promote claim, a plaintiff must have applied for a specific higher position, at least informally, *Petrosino v. Bell Atl.*, 385 F.3d 210, 228 (2d Cir. 2004), unless "the facts of a particular case" make "a specific application a quixotic requirement." *Id.* (citing

*Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998). This "exception is narrow and does not pertain simply because an employee asserts that an aura of discrimination in the workplace somehow discouraged her from filing a formal application." *Petrosino*, 385 F.3d at 227. If a plaintiff is able to show that the practice of discrimination was so systemic that an application would be a "vain gesture," and therefore futile, then the application requirement is waived. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 366 (1997) ("A per se prohibition of relief to nonapplicants could thus put beyond the reach of equity the most invidious effects of employment discrimination those that extend to the very hope of self-realization.").

Ordinarily, if a plaintiff did not apply for a specific position due to futility, he must show that "(1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures." *Fox v. Cty. of Yates*, 657 F. App'x 60, 63 (2d Cir. 2016) (citing *Petrosino v. Bell Atl.*, 385 F.3d 210, 227 (2d Cir. 2004)); *Opoku v. Brega*, No. 15-CV-2213, 2016 WL 5720807, at *12 (S.D.N.Y. Sept. 30, 2016). If futility of application for a position is established, the plaintiff's identification of the positions to which he "would have" applied may suffice. *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 711 (2d Cir. 1998) ("Brown has failed to allege the specific positions to which she would have applied had the alleged discriminatory practices not existed."); *see also Shah v. Tunxis Cmty. Coll.*, No. 14-CV-00712, 2015 WL 4254909, at *4 (D. Conn. July 14, 2015) (suggesting that the complaint would have survived a motion to dismiss if the plaintiff plausibly alleged that she was qualified for particular openings, "and allege[d] either that [she] applied for that position and [was] rejected, or that [she] would have applied for the position but [was] precluded from doing so") (quoting *Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 443

(S.D.N.Y. 2014)).

Plaintiff sufficiently alleges the futility of submitting an application for a promotion. Plaintiff alleges that the promotion practice at Con Edison requires a sponsorship by an existing member of management.  (Am. Compl. 9.)  Plaintiff also alleges that management does not sponsor the minority candidates and that the seventeen mechanics who have been promoted since 1994 are all white and none of the minority candidates have been ever considered.  (*Id.* 8–9.)

Moreover, while a direct application for a promotion is possible without a sponsorship, Plaintiff alleges that those who apply without a sponsorship receive "frivolous disciplinary actions," against them, "such as write-ups and suspensions."  (*Id.* at 8.)  These disciplinary actions, in turn, bar an employee from seeking a promotion for up to one year, well beyond the timeline of an application process, and remain a part of a permanent record and have other consequences for the employees who receive them, including decreased protections, making them vulnerable to termination.  (*Id.* at 10.)

Assuming the truth of these allegations, Plaintiff has sufficiently alleged the futility of submitting an application and also that any such application would result in serious negative consequences.  In addition, Plaintiff's allegations sufficiently identify the positions for which Plaintiff would have applied absent Defendant's discriminatory practice.  Plaintiff alleges that he and his co-workers have been denied promotions to "supervisory positions" despite the fact that "the Queens Gas operations has been on the forefront in promoting mechanics to management positions throughout the company" since Plaintiff joined the company in 1994.  (*Id*. at 8–9.)  Plaintiff further alleges the specific promotion position from "gas mechanic" to "gas supervisor." (*Id.*)  In addition, Plaintiff lists seventeen employees who were promoted to such positions, who are allegedly all white.

Based on these allegations, Plaintiff has sufficiently identified the positions to which he would have applied absent Defendant's discriminatory practice, satisfying this element. *See Brown*, 163 F.3d at 711 (suggesting that when an application for a specific job is futile, the plaintiff may instead identify a position that one would have applied for absent the defendant's discriminatory practice).

### ii.  Inference of discriminatory intent

Plaintiff alleges that Defendant treats white employees more favorably than minority employees. (Am. Compl. 8–10.)  Plaintiff states that all of the employees who have been promoted are white. (*Id.*)  Defendant argues that Plaintiff does not specify the race of other employees who were not promoted and only states that they are "unliked," and therefore cannot show that not promoting them was due to racial animus. (Def. Mem. 8.)

To survive a motion to dismiss an employment discrimination claim, a plaintiff must allege "facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Kpaka v. City Univ. of N.Y.*, --- F. App'x ---, --- 2017 WL 3866642, at *1 (2d Cir. Sept. 5, 2017) (quoting *Vega*, 801 F.3d at 87).  Whether facts give rise to a plausible inference of discrimination "is a 'flexible [standard] that can be satisfied differently in differing factual scenarios.'" *Howard v. MTA Metro-N. Commuter R.R.*, 866 F. Supp. 2d 196, 204 (S.D.N.Y. 2011) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996)).  "The facts required . . . to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination," but rather "need only give plausible support to a minimal inference of discriminatory motive." *Id.*; *see also Vega*, 801 F.3d at 87 ("[A] plaintiff must allege that the employer took adverse action against [him] at least in part for a discriminatory

reason, and [he] may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination.") "Courts making the plausibility determination should do so mindful of the elusive nature of intentional discrimination and the concomitant frequency by which plaintiffs must rely on bits and pieces of information to support an inference of discrimination, i.e., a mosaic of intentional discrimination." *Opoku v. Brega*, No. 15-CV-2213, 2016 WL 5720807, at *5 (S.D.N.Y. Sept. 30, 2016) (quoting *Gallagher v. Delaney*, 139 F.3d 338, 342 (2d Cir. 1998)) (some citations and internal quotation marks omitted).

"An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). *See also Carris v. First Student, Inc.*, 682 F. App'x 30, 32 (2d Cir. 2017) (finding a plausible inference where an African-American bus driver was terminated for conduct similar to that of three white bus drivers, who were placed on leave).

While, as Defendant argues, Plaintiff does not state that the "unliked" employees are all minorities, he specifically states that no minority candidate has been promoted to a supervisory role. Plaintiff also states that the mechanics who have been promoted are all white, that Plaintiff trained more than half of them, and many of them have less experience than Plaintiff. (Am. Compl. 8–10.) Plaintiff has satisfied his burden at this stage by alleging sufficient facts from which one can infer that whites are treated more favorably than individuals of Plaintiff's race. *Littlejohn*, 795 F.3d at 312.

The Court therefore denies Defendant's motion to dismiss Plaintiff's failure to promote claim.

### e. Retaliation claim

Plaintiff alleges that the reassignment of his ERG from the GDS Department to the Construction Department was a "hidden act[] of retaliation." (Am. Compl. 10.) Defendant argues that Plaintiff's retaliation claim should be dismissed because he does not identify any discriminatory acts that took place after Plaintiff's alleged protected activity. (Def. Mem. 10.)

Title VII bars retaliation by an employer against an employee because the employee "has opposed any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-(3)(a). Retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *See Littlejohn*, 795 F.3d at 315. To establish a prima facie case of retaliation, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Id.* at 316 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)).

As with other claims analyzed under the *McDonnell Douglas* framework, at the pleadings stage the allegations need only give "plausible support to the reduced prima facie requirements . . . ." *Id.* "Thus, for a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) [the] defendants discriminated — or took an adverse employment action — against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90.

### i. Protected activity

Defendant does not dispute that Plaintiff filed complaints with EEOA in 2005, and the

EEOC in 2012.

Filing either a formal or informal complaint challenging discrimination is a protected activity for purposes of retaliation claims under Title VII. *See Jagmohan v. Long Island R. Co.*, 622 F. App'x 61, 63 (2d Cir. 2015); *Summa v. Hofstra Univ.*, 708 F.3d 115, 126 (2d Cir. 2013). "A complaint of discrimination constitutes 'protected activity' only if (1) the plaintiff holds a good-faith belief that he suffered discrimination because of a protected characteristic and (2) that belief is reasonable." *Jagmohan*, 622 F. App'x at 64–65 (citing *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)); *Summa*, 08 F.3d at 126 (holding that Title VII "protects employees [who] . . . make[] informal protests of discrimination, including making complaints to management, so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law" (alterations in original) (quoting *Gregory v. Daly*, 243 F.3d 687, 700 (2d Cir. 2001))).

Because Plaintiff filed his complaint with EEOA in 2005 and his EEOC complaint in 2012, Plaintiff has sufficiently alleged that he complained of conduct that he reasonably believed violated the law and has therefore shown that he engaged in protected activity.

### ii. Causal connection

Plaintiff has not shown a causal connection between his EEOA or EEOC complaint and the alleged adverse action, Defendant's reassignment of Plaintiff's ERG from the GDS Department to Construction Department.

To sufficiently plead that a defendant-employer took an adverse employment action "because" a plaintiff opposed an unlawful employment practice, a plaintiff "must plausibly allege that the retaliation was a 'but for' cause of the employer's adverse action." *Vega*, 801 F.3d at 90 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. ---, ---, 133 S. Ct. 2517, 2533

(June 24, 2013)).  But-for causation does not require that retaliation "was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive."  *Id*. at 91 (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013)); *Pothen v. Stony Brook Univ.*, 211 F. Supp. 3d 486, 497 (E.D.N.Y. 2016).

A causal connection between the protected activity and the adverse action can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory actions directed against the plaintiff by the defendant."  *Littlejohn*, 795 F.3d at 319 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)); *see also Terry*, 336 F.3d at 152 ("Proof of such a causal connection can be established directly through evidence of retaliatory animus directed against a plaintiff, or indirectly by showing that the protected activity was followed closely by discriminatory treatment . . . such as disparate treatment of fellow employees who engaged in similar conduct."  (citation and internal quotation marks omitted)); *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001) (same).

Temporal proximity between the protected activity and the adverse action can support a causal connection.  *Feingold*, 366 F.3d at 156–57 ("[T]he requirement that [the plaintiff] show a causal connection between his complaints and his termination is satisfied by the temporal proximity between the two.") (collecting cases); *see also Vega*, 801 F.3d at 90 ("A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." (first citing *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001); and then citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010))); *Chung v. City Univ. of N.Y.*, 605 F. App'x 20, 23 (2d Cir. 2015) ("Ordinarily, causation may be

inferred from close temporal proximity.").

Plaintiff does not specify when the reassignment from the GDS Department to the Construction Department took place and therefore the Court cannot assess whether Plaintiff can establish temporal proximity between the reassignment and Plaintiff's EEOA or EEOC complaints. Plaintiff does not allege any other relationship between the reassignment from the GDS Department to the Construction Department and Plaintiff's protected activities of filing his EEOA and EEOC complaints. Therefore, Plaintiff fails to state a retaliation claim. The Court grants Defendant's motion to dismiss Plaintiff's retaliation claims.

### f. Dismissal due to misrepresentation on the IFP application

In support of his application for *in forma pauperis* ("IFP") status, Plaintiff provided a sworn statement executed on February 8, 2016, reporting his "gross pay or wages" as $1,800 per week, and his "take-home pay or wages" as $500 per week. (Mot. for Leave to File *In Forma Pauperis,* Docket Entry No. 2.) Defendant submits Plaintiff's paystub for the week ending February 6, 2016, showing that Plaintiff's gross pay was $2,854.51, and his net pay was $1,549.31. (Def. Mem. at 15; Gutierrez Decl. Ex. A.) Defendant argues that because of Plaintiff's inaccurate statement of poverty, the Court must dismiss Plaintiff's Amended Complaint pursuant to Title 28 U.S.C. § 1915. (*Id.*)

Title 28 U.S.C. § 1915 governs *in forma pauperis* ("IFP") proceedings and section 1915(e)(2)(A) provides that the court shall dismiss the case at any time if it determines that "the allegation of poverty is untrue . . ." *Vann v. Comm'r of N.Y. City Dep't of Correction,* 496 F. App'x 113, 114 (2d Cir. 2012). Despite this mandatory language, many courts have concluded that "dismissal [is] a 'harsh remedy to be saved for the most extreme cases.'" *Quesada v. Matari,* No. 14-CV-0970, 2015 WL 5820969, at *1 (S.D.N.Y. Sept. 15, 2015) (quoting *Waters v.*

*Camacho,* No. 11-CV-3263, 2012 WL 1117172, at *1 (S.D.N.Y. Apr. 2, 2012)); *Vann v. Horn*, No. 10-CV-6777, 2011 WL 3501880, at *1 (S.D.N.Y. Aug. 9, 2011) (stating that "[a] misrepresentation by a plaintiff as to his or her financial assets is not necessarily fatal to the plaintiff's claims" absent a showing of bad faith); *Morales v. E.I. Du Pont De Nemours & Co.*, 02-CV-786, 2004 WL 2106590, *2 (W.D.N.Y. Sept. 21, 2004) (denying defendant's motion to dismiss for failure to show plaintiff's misstatement of income was fraudulent or in bad faith).

    The main factor in determining whether a case is "extreme" and warrants dismissal is whether the plaintiff acted in bad faith to conceal his assets. *Vann*, 496 F. App'x at 115 (citing *Cuoco v. U.S. Bureau of Prisons,* 328 F. Supp. 2d 463, 468 (S.D.N.Y.2004)); *Alli v. Moore*, No. 14-CV-06597, 2015 WL 5821174, at *3 (S.D.N.Y. Sept. 15, 2015) (finding that failure to disclose a settlement of $50,000 did not constitute bad faith as plaintiff was awaiting actual payment); *Berry v. Criss*, No. 09-CV-08413, 2012 WL 1656946, at *2 (S.D.N.Y. Apr. 16, 2012) (denying the defendant's motion to dismiss because he did not prove that the inaccuracy of the IFP application was made in bad faith). *See also Morales v. E.I. Du Pont De Nemours & Co.*, No. 02-CV-786, 2004 WL 2106590, *2 (W.D.N.Y. Sept. 21, 2004).

    A deliberate attempt to conceal additional sources of income or value of assets supports a finding of bad faith. *See Cuoco* 328 F. Supp. 2d at 468 (finding bad faith when Cuoco created an illusion of poverty through a series of deceptive acts, such as preventing the deposit of the settlement income from a different lawsuit). Similarly, in *Vann*, 496 F. App'x at 116, the plaintiff intentionally omitted from his application payroll and non-payroll deposits into his prison account and failed to explain this omission when given an opportunity to respond to defendant's motion to dismiss.

    A plaintiff's familiarity with the IFP system and subsequent failure to comply may also

suggest bad faith. *See, e.g.*, *Vann*, 496 F. App'x 113; *Waters v. King,* No. 11-CV-3267, 2012 WL 1889144, at *3 (S.D.N.Y. May 24, 2012) (finding bad faith misrepresentation of assets when the plaintiff omitted a $600 settlement check from his IFP application and failed to deposit the check into his inmate account despite extensive litigation experience); *Cuoco* 328 F. Supp. 2d at 466, 469 (finding that the plaintiff who obtained IFP status in fifteen previous civil suits acted in bad faith in concealing income on her IFP form).

Here, there is no indication that Plaintiff took specific steps to conceal his assets or is a repeat IFP filer. Thus, based on the record before it, the Court cannot conclude that Plaintiff misrepresented his income in bad faith and therefore denies Defendant's motion to dismiss the action. *See Alli*, 2015 WL 5821174, at *2 (declining to dismiss for plaintiff's misrepresentation of assets by omitting an anticipated settlement payment because he partially admitted that he was awaiting payment, negating bad faith).

The Court revokes Plaintiff's IFP status and orders Plaintiff to retroactively pay all of the applicable court fees. *Camacho*, 2012 WL 1117172, at *1 (revoking IFP status for failure to disclose $600 when there was "no clear showing that the plaintiff misstated his income in bad faith"); *Choi v. Chem. Bank*, 939 F. Supp. 304, 309 (S.D.N.Y.1996) (declining to dismiss despite "substantial and reprehensible misrepresentations on his [IFP] application" because neither the court nor the defendant suffered prejudice). The Clerk of Court is directed to provide Plaintiff with a list of the expenses incurred as a result of his IFP application.

### III. Conclusion

For the reasons discussed above, the Court denies the motion to dismiss Plaintiff's failure to promote claim and grants the motion to dismiss Plaintiff's retaliation and remaining discrimination claims.

SO ORDERED.

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated:  December 29, 2017
         Brooklyn, New York